BARTON W. CHABOT, Respondent, v U-HAUL COMPANY OF KANSAS CITY, MISSOURI, Defendant and Third-Party Plaintiff-Respondent-Appellant. L. P. ENTERPRISES, INC., Third-Party Defendant-Appellant-Respondent, et al., Third-Party Defendants.

Third Department, November 26, 1986

APPEARANCES OF COUNSEL

*Harvey & Harvey, Mumford & Kingsley (John P. Kingsley* of counsel), for defendant and third-party plaintiff-respondent-appellant.

*Raymond C. Green (Donohue, Donohue & Sabo, P. C. [Kenneth G. Varley],* of counsel), for third-party defendant-appellant-respondent.

*Englert & McHugh, P. C. (Dennis M. Englert* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

The motor vehicle accident underlying this appeal occurred on Sunday, March 28, 1982 at the Rotterdam Industrial Park in Schenectady County. In the afternoon of that day, plaintiff and third-party defendant Philip A. Panella, Jr. (Panella), drove a 24-foot box trailer, rented from defendant U-Haul

Company of Kansas City, Missouri (U-Haul), to the premises of third-party defendant L. P. Enterprises, Inc. (L.P.) for the purpose of loading space heaters manufactured by L.P. for shipment the following day. Plaintiff's nine-year-old son accompanied his father and Panella, who drove the truck to the L.P. warehouse site. Panella is the president of L.P., plaintiff's employer. At about the same time, Panella's 16-year-old son, third-party defendant Carson A. Panella (Carson), and a friend arrived at the site in Panella's automobile. Upon arrival with the truck, Panella parked it and left it in the sole control of plaintiff. Plaintiff drove the truck to one warehouse where space heaters were loaded, and then backed it up to the wall of a second warehouse for the same purpose. When he stopped it, he left a small space only large enough for a man to pass between the driver's rear side of the truck and the warehouse wall. The truck was equipped with a standard transmission and floor shift with which plaintiff admits he was familiar. Plaintiff left the truck in reverse gear, with the ignition switch off, the keys in the switch and the doors unlocked. Plaintiff then proceeded to help Panella load heaters into the truck from the rear. After completing the loading operation and while Panella was walking away from the warehouse on the passenger's side of the truck, checking off the stock on a clipboard, plaintiff was closing the door of the warehouse and was standing behind the truck between the truck and loading dock. At this time and in these circumstances, Carson decided to turn on the truck's radio. When the radio failed to operate, Carson decided that it needed power and turned on the ignition switch. Being in gear, the truck lurched backward three times, pinning plaintiff to the wall and smashing his right knee between the wall and bumper of the truck. Panella jumped into the truck and pulled it forward, releasing plaintiff who fell to the ground. Panella went for medical assistance and Carson attempted to administer first aid. Trained medical technicians arrived at the scene and, after administering emergency treatment, removed plaintiff to the Ellis Hospital, where he was to undergo long and painful treatment.

Plaintiff commenced suit against U-Haul, pursuant to Vehicle and Traffic Law § 388, in which he alleged that the U-Haul vehicle was negligently operated or used by Carson. U-Haul commenced third-party suits against L.P., Panella and Carson, seeking contribution and/or indemnity. Upon stipulation of the parties, the trial was bifurcated, with the liability issue tried separately from the issue of damages.

■ At trial it was initially contended by U-Haul and third-party defendants that Carson was an employee of L.P. and, therefore, a coemployee of plaintiff, precluding plaintiff's recovery under the authority of *Rauch v Jones* (4 NY2d 592) and *Naso v Lafata* (4 NY2d 585). This issue was, in our opinion, properly submitted to the jury on the verdict sheet composed by the trial court. The jury unanimously determined that Carson was not an employee of L.P. at the time of plaintiff's accident. On appeal, U-Haul argues that the manner in which this issue was submitted to the jury constitutes reversible error because of the parenthetical phrase which the court inserted following the question dealing with the coemployee status. That phrase instructed the jury: "If your answer is 'Yes', go no further, report that finding to the court; if your answer is 'No', consider the following questions". It is U-Haul's claim that the parenthetical phrase was a clear signal to the jury that plaintiff would not recover if they answered the question "yes" and that the jury was, therefore, unduly and improperly persuaded to answer the question "no". We find no error in the question as submitted, especially since the court instructed the jury to answer the questions submitted and not to "try to rationalize why anything was done".

By its verdict the jury further determined that plaintiff was not guilty of any negligence that was a proximate cause of the accident. Panella, as president of L.P., and his son Carson were found to be negligent, with liability apportioned at 95% and 5%, respectively. In the circumstances described above, we find no reason to disturb either the finding of no negligence on the part of plaintiff or the finding of negligence on the part of Carson. Carson was 16 years old at the time and possessed a learner's permit. He switched on the ignition to power the radio without looking behind the truck and without ascertaining if it was in gear and in disregard of the consequences. Clearly, his conduct was negligent, as the jury found. As to plaintiff himself, the jury was justified in finding him not negligent, as a matter of fact. Even though plaintiff left the truck in reverse gear with the key in its ignition and its doors unlocked, it may still be properly concluded that plaintiff could not reasonably foresee that Carson would enter the truck and turn on the ignition switch in order to power the radio that he desired to hear. The finding of the jury of negligence on the part of Carson, as a nonemployee, in his use of the truck is imputable to U-Haul under Vehicle and Traffic Law § 388 and imposes liability upon U-Haul to plaintiff.

Parenthetically, it is noted that U-Haul does not dispute that Carson's use of the vehicle was permissive.

U-Haul's other arguments with respect to liability, which include the trial court's failure to amplify its definition of negligence, that the verdict was against the weight of the evidence, that the court failed to marshall the evidence and that the court abused its discretion in refusing U-Haul a redirect examination of Panella, have all been considered and found to be without merit.

On the appeal by L.P., it is urged that an appropriate motion, made after L.P. had rested, was improperly denied by the trial court. At that time, counsel for L.P. moved on its behalf for dismissal of U-Haul's third-party action against L.P. on the ground that no evidence of negligence on the part of the corporation, through Panella its president, had been shown as a matter of law. The trial court denied this motion. In our view, the trial court erred in this respect since we believe the motion should have been granted. The only basis for imposing liability on L.P. is under Labor Law § 200, which was charged in essence by the court. That section is simply a codification of the common-law duty of an employer to provide a safe workplace (Nagel v Metzger, 103 AD2d 1). A violation of this statute does not impose absolute liability. In effect, section 200 is a negligence statute (Kennedy v McKay, 86 AD2d 597) and in order to establish a violation thereof there must be notice, actual or constructive, of the condition about which complaint is made (Schnur v Shanray Constr. Corp., 31 AD2d 513). Clearly and unquestionably, it was plaintiff himself who left the truck parked in reverse gear with the keys in the ignition and the doors unlocked. There is no reason to believe, since he was not in the truck at the time, that Panella knew that the truck was left in this condition or that he had occasion to observe the condition in which plaintiff had left it. Furthermore, there is no showing that Panella knew or should have known that his son Carson would enter the truck to turn the radio on. The act of Carson in so doing was a sudden and unexpected event and was the sole proximate cause of plaintiff's injuries. We conclude, therefore, that there was insufficient evidence to permit the jury to pass on the question of any negligence on the part of Panella that proximately caused or contributed to plaintiff's accident. Indeed, it would be inconsistent to hold Panella responsible for the condition in which the truck was left by plaintiff when plaintiff himself was absolved of all negligence by the jury after leaving it in

that same condition. In view of this conclusion, we do not reach U-Haul's argument that the verdict should be reduced by the percentage attributable to L.P., plaintiff's employer.

In regard to the damages in the amount of $1.8 million awarded to plaintiff, U-Haul contends that the award is excessive and, at the least, should be reduced. Our power to overturn or reduce a verdict for excessiveness is to be exercised "only where the verdict is so disproportionate to the injury and its consequences as to shock the conscience of the court" (Hutchins v Gorlicki, 92 AD2d 1000, 1001, appeals dismissed 61 NY2d 757). At the time of the accident plaintiff was 42 years old and in good health, except for diabetes. He had established a clientele as a hair stylist and had his own small contracting business. As a service representative for L.P., he was making $290 per week. His hobbies were swimming, fishing, hunting, hiking and woodworking.

The accident crushed plaintiff's knee and caused arterial damage. He experienced excruciating pain at the time of the accident and less severe pain throughout the 2½ years from accident to trial. Pins were put into his leg and he was placed in various casts and traction devices. Bandages were changed 3 to 4 times a day for several years, since there was draining from the back of the knee where he lost all the skin and most of the muscle. He was maintained on medication and he had numerous operations to graft skin, including a cross-pedicle graft from his left leg to his right. He developed a dropped foot condition.

Plaintiff was in the hospital until October 1, 1982. He had to learn how to walk again. In January 1983, plaintiff injured his leg when he fell because of the dropped foot. He spent all of January in the hospital because his right leg was infected. He returned to the hospital for a bone graft in May 1983, when the doctors determined that he had developed osteomyelitis. Later, skin had to be grafted over the site of the bone graft. In December 1983, the pin sites became infected and plaintiff was again hospitalized. In the spring of 1984, plaintiff looked forward to the possibility of returning to work as a hair stylist. He procured a part-time job, but a few days before he was to start the new job, he fell and broke his right leg. The break required additional hospitalization for 13 weeks and six additional surgical procedures. At the time of the trial, medical prognosis indicated that his right leg would have to be amputated. In addition, plaintiff developed an apparently permanent allergic reaction to the antibiotics he

had been taking, a reaction that affected his vision and balance.

In all, plaintiff has endured approximately 16 operations. Testimony was adduced at trial that medical expenses totaled $169,000, of which $50,000 was paid by automobile insurance. Future medical expenses, including the proposed amputation and required prosthesis, discounted to present value, was estimated to be $41,000. The amputation that occurred after trial, in fact, cost $38,500. Evidence was introduced that plaintiff working 30 hours per week as a hair stylist and receiving $16.50 an hour, would have received a present value of $475,000 in lost earning potential for the 22 estimated remaining working years of his life. An additional estimated amount of $76,362 represented wages plaintiff lost up to the date of the trial and an estimated amount of $139,921 was attributed to household services that plaintiff will have to procure to enable him to live a comfortable existence.

■ In these circumstances, we find the verdict of $1.8 million, as found by the jury, to be fair and just compensation for the injuries sustained by plaintiff. Accordingly, the judgment should be modified with respect to the liability imposed upon third-party defendant L.P. and, as so modified, affirmed.

KANE, J. (concurring in part and dissenting in part). I respectfully dissent. My disagreement is founded upon that portion of the jury's verdict which found plaintiff free from fault. I adopt that portion of the statement of the majority which concludes that Philip Panella should be absolved from any claim of negligence which proximately caused or contributed to plaintiff's accident, for, in my view, its description of the part played by plaintiff in this unfortunate accident articulates negligence on his part. A finding of no negligence on plaintiff's part is contrary to the weight of the evidence in light of plaintiff's failure to remove the keys from the truck when he knew others were nearby and in light of his leaving it in reverse when he knew he would be working behind the truck. Moreover, in my opinion Carson Panella's actions were reasonably foreseeable to plaintiff. Accordingly, a new trial should be ordered to correctly apportion damages (see, Lopato v Kinney Rent-A-Car, 73 AD2d 565, 566, 567).

MAHONEY, P. J., WEISS and LEVINE, JJ., concur with CASEY, J.; KANE, J., concurs in part and dissents in part in an opinion.

Judgment modified, on the law, without costs, by amending

the second decretal paragraph to provide that the judgment of defendant U-Haul Company of Kansas City, Missouri, over against third-party defendant Carson A. Panella be for 100% of the judgment awarded to plaintiff; third-party complaint against third-party defendants Philip A. Panella, Jr., and L.P. Enterprises, Inc., is dismissed; and, as so modified, affirmed.